**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **SANJIV JAIN, Trustee** | ) | |
| **SANJIV JAIN LIVING TRUST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:20-cv-01161-TSE-IDD** |
| | ) | |
| **OLD DOMINION NATIONAL BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

William B. Schroeder (VSB No. 43179)
Kristin E. Draper (admitted *pro hac vice*)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland  20854-6803
TEL:   (301) 230-5200
FAX:   (301) 230-2891
Email:  WSchroeder@shulmanrogers.com
          KDraper@shulmanrogers.com

*Counsel for Plaintiff*

Dated:  November 10, 2020

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF THE ARGUMENT ................................................................................... 2

12(b)(6) STANDARD ......................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

    A.    The Trust Has Stated a Plausible Claim For Violation Of The
          EFTA and Regulation E .................................................................................. 5

          i.    The EFTA Claim Is Brought By The Trust, Through Its Trustee and Sole
               Beneficiary. ......................................................................................... 6

          ii.    The Trust Account Is an "Account" Under the EFTA Because It Is Used
               For Personal, Family and Household Purposes. .................................... 9

          iii.    The EFTA Encompasses The First Wire Because Funds Were Wired Out
               Of An Account Used For Personal, Family And Household Purposes. ... 13

          iv.    This Court Should Exercise Supplemental Jurisdiction Over The State law
               Claims. ............................................................................................... 15

    B.    Old Dominion Breached The Wire Transfer Agreement And
          Account Terms And Conditions By Failing To Verify The First
          Wire And Transferring Funds Without Authorization ......................................... 16

          i.    The Complaint Alleges Specific Breaches of The Wire Transfer
               Agreement. ......................................................................................... 17

          ii.    The Wire Transfer Agreement Unequivocally States The Authorized Wire
               Transfer Amount. ................................................................................ 19

          iii.    Old Dominion Failed To Follow Commercially Reasonable Practices
               When It Failed To Verify The Authenticity Of The First Wire Prior To
               Transferring $638,201.00 Of The Trust's Assets. ................................. 20

    C.    The Complaint States A Plausible Claim For Negligence .................................... 23

    D.    The Complaint States A Plausible Claim For Conversion ................................... 26

CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 3

*Ballard v. Branch Banking & Tr. Co.*, 284 F.R.D. 9 (D.D.C. 2012) .............................. 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 3

*Brown v. Wells Fargo & Co.*, 2013 WL 6851068 (D. Minn. Dec. 30, 2013) ................. 6

*Carrington v. HSBC Bank USA, N.A.*, 760 F. Supp. 2d 589 (E.D. Va. 2010) ...................... passim

*Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349 (6th Cir. 2008) .................................. 8

*Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164 (N.D. Ill. 1995) ................................ 9

*Commerce Bancorp, Inc.*, 2006 WL 1409492 ............................................................. 26

*Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887, 782 N.Y.S.2d 530 (Sup. Ct. 2004) ...................... 25

*Dorsey v. U.S. Bank Nat'l Ass'n*, 2012 WL 13001917 (M.D. La. Apr. 2, 2012) .......................... 7

*Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009) ................. 26

*Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621 (S.D.N.Y. June 22, 2009) ........... 6

*Ghalchi v. U.S. Bank, N.A.*, 2015 WL 12655402 (C.D. Cal. Jan. 8, 2015) ................... 7

*Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294
    (S.D. Fla. 2016) ..................................................................................................... 6

*Golden-Koether v. JPMorgan Chase Bank, N.A.*, 2011 WL 6002979
    (D.N.J. Nov. 29, 2011) ......................................................................................... 14

*H–B Partnership v. Wimmer*, 220 Va. 176, 257 S.E.2d 770 ....................................... 24

*In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ................. 3

*Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384 (W.D.N.Y. 2010) ...................... 6

*Jones v. Commerce Bancorp, Inc.*, 2006 WL 1409492 (S.D.N.Y. May 23, 2006) ..................... 24

*Langston & Langston, PLLC v. SunTrust Bank*, 2020 WL 4907220
    (S.D. Miss. Aug. 20, 2020) ................................................................................. 14

*Marcus, Santoro & Kozak, P.C. v. Hung-Lin Wu*, 274 Va. 743, 652 S.E.2d 777 (2007)............ 11

*Matthews v. Bank of Am., N.A.*, 2006 WL 1720688 (E.D. Va. June 20, 2006) ......................... 24

*Maynard v. PayPal, Inc.*, 2019 WL 355243 (N.D. Tex. Aug. 5, 2019) ........................................ 6

*McClellon v. Bank of Am. N.A.*, 2018 WL 4852628 (W.D. Wash. Oct. 5, 2018)........................ 14

*MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 2015 WL 4914695
   (D.N.J. Aug. 18, 2015).............................................................................................................. 6

*Pinkston-Poling v. Advia Credit Union*, 227 F. Supp. 3d 848 (W.D. Mich. 2016)...................... 8

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) ................................................. 3

*Pro-Concepts, LLC v. Resh*, No. 2:12CV573, 2014 WL 549294 (E.D. Va. Feb. 11, 2014) ........ 26

*Regatos v. North Fork Bank*, 257 F.Supp.2d 632 (S.D.N.Y.2003)............................................... 15

*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998) .......... 23

*Royal Arcanum Hosp. Ass'n of Kings Cty., Inc. v. Herrnkind*, 950 N.Y.S.2d 726 (Table),
   2012 WL 1087679 (N.Y. App. Div. Mar. 28 2012) ................................................................ 7

*Shawmut Worcester Cty. Bank v. First Am. Bank & Tr.*, 731 F. Supp. 57
   (D. Mass. 1990)......................................................................................................................... 7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)...................................................................... 3

*Voeks v. Pilot Travel Centers*, 560 F. Supp. 2d 718 (E.D. Wis. 2008)......................................... 15

*Wright v. Citizen's Bank of E. Tennessee*, 640 F. App'x 401 (6th Cir. 2016)............................... 14

*Wynn v. Wachovia Bank, N.A.*, 2009 WL 1255464 (E.D. Va. May 6, 2009) ............................... 24

**Statutes**
15 U.S.C. § 1602(h) ......................................................................................................................9
15 U.S.C. § 1693a(6) ................................................................................................................6, 9

**Other** Authorities
VA. Code § 8.4A-202(b) ..............................................................................................................21

**Regulations**
12 C.F.R. § 205.3(b) .....................................................................................................................9
12 C.F.R. § 205.3(g) .....................................................................................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SANJIV JAIN, Trustee** | ) |
| **SANJIV JAIN LIVING TRUST,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Case No. 1:20-cv-01161-TSE-IDD** |
| | ) |
| **OLD DOMINION NATIONAL BANK,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff Sanjiv Jain Living Trust ("Plaintiff" or "Trust"), by and through its Trustee, Sanjiv Jain and undersigned counsel, respectfully submits this brief in Opposition to the Motion to Dismiss filed by Defendant Old Dominion National Bank (the "Defendant," "Old Dominion," or "Bank"). The Bank seeks to dismiss Counts 1-4 of the Complaint on the basis that the Trust (i) fails to state a claim for relief under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. (Count I), and as such, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims; (ii) fails to state a claim for breach of contract (Count II) because its actions in transferring $638,201.00 in Trust property were commercially reasonable and because the Complaint does not allege what verification procedures Old Dominion failed to follow; and (iii) fails to state a claim for negligence (Count III) and conversion (Count IV), because each of these claims is barred by the source of duty rule.

The Motion to Dismiss must be denied because (i) the Trust has alleged sufficient facts to support a claim under the EFTA because the Trust Account is held for personal, family and household purposes and the claim is brought by the Trust through its trustee and sole beneficiary;

(ii) the Trust has alleged how the specific actions taken by Old Dominion breached the Wire Transfer Agreement and Terms and Conditions of the Trust Account, and any inquiry into whether Old Dominion took appropriate steps to safeguard the Trust's assets would be highly fact-intensive, and therefore inappropriate to determine on a Motion to Dismiss; (iii) the Trust has adequately plead facts to demonstrate that Old Dominion breached its fiduciary and professional obligations when failed to conduct any reasonable verification of the authenticity of the First Wire before transferring the funds, as evidenced by the fact that Old Dominion called the cell phone number on record in connection with the Second Wire; and (iv) by authorizing the transfer of the Trust's assets Old Dominion wrongfully exercised authority and control over the Trust's assets in breach of its fiduciary duties.

## **SUMMARY OF THE ARGUMENT**

This is an action brought under the EFTA and common law to recover over $600,000 that Old Dominion wrongfully transferred from the Trust's account on the basis of a fraudulently issued email requesting a wire transfer to a company in China, without receiving valid authorization from the Trustee for the account, Mr. Sanjiv Jain ("Mr. Jain"). Old Dominion's failure to take reasonable steps to either (i) verify the source of the transfer request prior to issuing a wire transfer in the amount of $638,201.00 (the "First Wire") to a never-before-heard-of foreign company located in China, and (ii) failure to comply with specific requirements regarding investigation and error resolution, are violations of the EFTA. Old Dominion's failure to take commercially reasonable steps to verify the source of the transfer request prior to issuing the First Wire, failure to conduct a reasonable investigation after Mr. Jain alerted Old Dominion to the fraudulent nature of the First Wire, and attempts to hold the Trust liable for the fraud on the Trust are also clear violations of state common law.

## 12(b)(6) STANDARD

The standard of review governing a Rule 12(b)(6) motion to dismiss is well established.  A complaint need not contain detailed factual allegations, but must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). A Rule 12(b)(6) motion should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In addition, this Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 627 (E.D. Va. 2000).  "Rule 12(b)(6)'s purpose is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quotations and citations omitted).

The fact intensive nature of the claims at issue in this case make it improper for the Court to grant Old Dominion's Motion to Dismiss.  Old Dominion has attached several documents to its Motion to Dismiss that were not attached or referred to in the Complaint, and thus should not be considered by the Court.  *Carrington v. HSBC Bank USA, N.A.*, 760 F. Supp. 2d 589, 592 (E.D. Va. 2010) (when considering a motion to dismiss for failure to state a claim courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference).  To the extent Old Dominion is attempting to convert its Motion to Dismiss to a motion

for summary judgment, the Trust should be entitled to discovery.  Fed.R.Civ.P. 12(d).[1]  This point is further emphasized by the fact that counsel for the Trust requested from Old Dominion all documents and communications related to the Trust Account and fraudulent wires, and the Trust refused to provide any documents or communications in response.  *See* Exhibit 1 hereto, February 6, 2020 Demand Letter from Kristin E. Draper to Edward W. Cameron, Esq. requesting, *inter alia*, "[a]ny and all terms and conditions to which you contend Mr. Jain agreed in connection with the account, specifying the precise sections that you allege Mr. Jain has breached."

At a minimum, the Trust should be entitled to discovery regarding (i) the account opening process, including why Old Dominion recommended the Trust open a MMA account; (ii) whether Old Dominion ever assigned the Trust a unique Wire Transfer password as required by the Wire Transfer Agreement; (iii) what information was on the Payment Order form when it was sent by Old Dominion to the hacker in response to the email requesting the First Wire; (iv) how Old Dominion processes or approves other wire transfer requests to China; (v) why Old Dominion called Mr. Jain on the phone number provided on the Wire Transfer Agreement in response to the request for the Second Wire, but not the request for the First Wire; (vi) whether Old Dominion filed a suspicious activity report in response to either the First or Second Wire; (vii) all internal discussions and/or emails regarding the First and Second Wire; and (viii) the nature of the relationship between Old Dominion and Mr. Jain, including efforts to recruit Mr. Jain as an investor in the Bank.

---

[1] If the Court is inclined to grant the Motion to Dismiss, the Trust respectfully requests leave to amend its Complaint.

## ARGUMENT

**A.    The Trust Has Stated a Plausible Claim For Violation Of The EFTA and Regulation E**

In Count I, the Trust alleges that Old Dominion violated the EFTA and Regulation E when it (i) failed to limit the Trust's liability for the fraudulent and unauthorized transfer Old Dominion completed on or about October 9, 2019, (ii) failed to conduct a good-faith investigation after the Trust notified Old Dominion of the fraudulent nature of the transfer, (iii) failed to provide the Trust with an explanation of the investigation conducted within three business days of its conclusion, (iv) failed to provide the Trust with copies of the documentation that Old Dominion relied upon to reach its conclusion that there was no error or fraud committed in authorizing the transfer, and (v) refused to credit the Trust despite knowing that Old Dominion did not speak with Mr. Jain prior to initiating the fraudulent First Wire.

Old Dominion argues that Count I fails because the account at issue falls out of the scope of the EFTA because the Trust maintained a prime business money mutual account (the "Trust Account"), which Old Dominion argues was not used for personal or household purposes.  Old Dominion's argument fails because (i) regardless of the title of the account, the Trust Account was used solely for personal, family and household purposes; and (ii) Old Dominion advised Mr. Jain to open an MMA account, despite knowing that the Trust Account was not going to be used for business or commercial purposes.  Old Dominion should not be permitted to avoid liability under the applicable consumer protection laws by steering customers towards "business" accounts that Old Dominion knows will fall outside the applicable consumer protection laws.

### i.    The EFTA Claim Is Brought By The Trust, Through Its Trustee and Sole Beneficiary.

Old Dominion argues that the Trust's EFTA claim fails because the trust is not a "consumer" under the EFTA.  The Complaint in this action was filed by the Trust, by and through its trustee and sole beneficiary, Sanjiv Jain.  Mr. Jain is a natural person and "consumer" under the EFTA, 15 U.S.C. § 1693a(6), and was the person ultimately affected by Old Dominion's failure to limit the Trust's liability for the fraudulent and unauthorized First Wire, failure to conduct a good-faith investigation, and refusal to credit the Trust Account despite knowing that the First Wire was issued in complete disregard for the required security procedures.  Ultimately, it is Mr. Jain who was harmed by Old Dominion's breach of the EFTA.

The case law cited by Old Dominion is easily distinguishable.  *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) ("Plaintiffs here are all business entities"); *Maynard v. PayPal, Inc.*, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) (plaintiff "Maynard Investment Group" was a financial institutions and thus not a "consumer" under the EFTA); *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1306 (S.D. Fla. 2016) (transfers were made from an IOTA trust account and operating account for plaintiff law firm, and since law firm was a business entity and accounts were held for commercial purposes, EFTA did not apply); *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 2015 WL 4914695, at *10 (D.N.J. Aug. 18, 2015) (plaintiffs were all business entities); *Brown v. Wells Fargo & Co.*, 2013 WL 6851068, at *5 (D. Minn. Dec. 30, 2013) (refusing class certification in part because proposed class would include Wells Fargo customers who held an account for business purposes); *Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621, at *4 (S.D.N.Y. June 22, 2009) (EFTA did not apply to law firm's Interest on Lawyer's Account (IOLA), the firm's IOLA was an "attorney trust account" established solely for commercial reasons); *Royal Arcanum Hosp. Ass'n of Kings*

*Cty., Inc. v. Herrnkind*, 950 N.Y.S.2d 726 (Table), 2012 WL 1087679, 8 (N.Y. App. Div. Mar. 28 2012 (plaintiff was a not-for-profit corporation); *Ballard v. Branch Banking & Tr. Co.*, 284 F.R.D. 9, 12 (D.D.C. 2012) (refusing class certification and discussing BBT's argument that some portion of the proposed class would include individuals who held corporate accounts); *Dorsey v. U.S. Bank Nat'l Ass'n*, 2012 WL 13001917, at *4, n. 6 (M.D. La. Apr. 2, 2012) (discussing EFTA's express language that a consumer can bring action against "any person who fails to comply with any provision of [EFTA]," and that "person" in this context, includes legal entities and therefore included defendant PayPal); *Shawmut Worcester Cty. Bank v. First Am. Bank & Tr.*, 731 F. Supp. 57, 62 (D. Mass. 1990) (dispute between two financial institutions); *Ghalchi v. U.S. Bank, N.A.*, 2015 WL 12655402, at *8 (C.D. Cal. Jan. 8, 2015) (discussing complaints plaintiff filed against a non-party in which she categorized the same account at issue as a "business account," but since plaintiff did not categorize the account as a "business account" before the District Court for the Central District of California, the court would not take judicial notice of the fact that the checking account at issue was a business account).

Here, as compared to in the case law cited by Old Dominion, the account was not held by a business or financial institution, and the account was not held primarily for business or commercial purposes, but rather was held solely for personal, family and household purposes. Further, Old Dominion has not cited a single case similar to this one, where the EFTA claim is brought by a Trust that benefits a natural person (a "consumer" under the EFTA), and where the account is held for personal, family and household purposes.

In its Motion to Dismiss, Old Dominion argues that after it received the request for the First Wire it emailed an "International Wire Transfer Authorization Form" to Mr. Jain's email address, that the form was returned "including with the Trust Account's information and Jain's

address and social security number – and executed by Jain," and that Old Dominion also called the phone number provided in the email requesting the First Wire.  Motion to Dismiss at p. 5.  The Motion to Dismiss also attaches its Exhibit B, which purports to be an email chain related to the First Wire "from Jain's secure email".  Motion to Dismiss at p. 3.

As an initial matter, the email chain at Exhibit B was not attached or referred to in the Complaint, and thus should not be considered on a motion to dismiss.  *Carrington v. HSBC Bank USA, N.A.*, 760 F. Supp. 2d 589, 592 (E.D. Va. 2010) (when considering a motion to dismiss for failure to state a claim courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference).  Nevertheless, examination of Exhibit B to the Motion to Dismiss in fact reveals that the wire transfer was requested "from the LLC account," *see* Exhibit B at p. 3/10, and not the Trust Account; and that the authorization form sent by Old Dominion was addressed to "Sanjiv Jain" as the customer, and not the Trust.  *See* Motion to Dismiss, Exhibit B at p. 6/10.  The phone number included in the email and international wire transfer authorization form also does not match the phone number provided on the Wire Transfer Agreement.  *Compare* Motion to Dismiss, Exhibit B with Complaint, Exhibit 1.  Clearly Old Dominion understood and acted as if it was dealing with Mr. Jain, the individual, and not the Trust.

Further, "the EFTA is a remedial statute designed to protect consumers and, therefore, must be given "'a broad, liberal construction in favor of the consumer.'" *Pinkston-Poling v. Advia Credit Union*, 227 F. Supp. 3d 848, 851 (W.D. Mich. 2016) (*quoting Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008)), and "exclusions or exceptions [in the EFTA] should be construed narrowly." *Pinkston-Poling*, 227 F. Supp. 3d at 851.  With this guidance in mind, and taking the allegations in the Complaint as true, as the Court must, the Trust has alleged a plausible claim for violation of the EFTA.

### ii.   The Trust Account Is an "Account" Under the EFTA Because It Is Used For Personal, Family and Household Purposes.

The Trust Account implicates the EFTA because the EFTA's requirements are triggered by "electronic fund transfer[s]" that "debit or credit an account."  15 U.S.C. § 1693a(6); 12 C.F.R. § 205.3(g).  Thus, the meaning of "account" under the EFTA determines whether the Trust has properly stated a claim under the EFTA.

Pursuant to its rulemaking authority under the EFTA, § 1693b, the Federal Reserve Board promulgated a set of regulations codified at 12 C.F.R. part 205, otherwise known as "Regulation E," including a section that defines "account" as:

> a demand deposit (checking), savings, or other consumer asset account ... held either directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.

12 C.F.R. § 205.3(b).

In the instant case, the Trust Account was "established primarily for personal, family, or household purposes."  In interpreting this phrase, courts have looked to the Truth In Lending Act ("TILA"), which defines "consumer credit transaction" as those in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, [or] household . . . purposes," 15 U.S.C. § 1602(h).  Both the EFTA and TILA seek to distinguish "consumer" transactions from "business" transactions, and courts will "examine the transaction as a whole and in light of the entire surrounding factual circumstances, and if the transaction involves a profit motive, that indicates a business or commercial transaction."  *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1174 (N.D. Ill. 1995) (internal citations and quotations omitted).

Here, as alleged in the Complaint, despite being designated as a "Business MMA" account, the Trust Account at issue was never used for business or commercial purposes, and instead was

strictly used for personal or household (*i.e.* consumer) purposes.  There was no "profit motive" in the purpose of the Trust Account, instead it was established strictly to safeguard Mr. Jain's assets. Further, the Trust chose to open a business MMA account after consulting with Old Dominion, who advised Mr. Jain to open this type of account.  Old Dominion should not be permitted to steer customers towards one account over another in order to avoid liability under applicable consumer protection laws, including the EFTA.[2]  Had Old Dominion asked (which it likely did and nonetheless steered Mr. Jain towards an MMA account), it would have known that the Trust would not use the account for business or commercial purposes, and instead would use the account strictly for personal, family and household purposes.  At a minimum, the Trust is entitled to discovery regarding the process through which the Trust Account was opened, including why Old Dominion suggested the Trust open a MMA account.

Old Dominion's attempt to cast the Trust Account as an "account held by a financial institution pursuant to a bona fide trust agreement," and thus carved out of the EFTA, is without merit.  Motion to Dismiss, at p. 9.  First, the Trust here is not a "financial institution," which is defined by Black's Law Dictionary as a "business, organization, or other entity that manages money, credit, or capital, such as a bank, credit union, savings-and-loan association, securities broker or dealer, pawnbroker, or investment company."  FINANCIAL INSTITUTION, Black's

---

[2] 15 U.S.C. § 1693m(a)(1)-(3) provides that a consumer may recover actual damages, plus an additional sum between $100 and $1,000, the costs of the action, and reasonable attorney's fees for a bank's violation of the EFTA.  15 U.S.C. § 1693f(e) provides that a court may award treble damages if it finds the financial institution "did not make a good faith investigation of the alleged error," "did not have a reasonable basis for believing that the consumer's account was not in error," or "knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation."

Law Dictionary (11th ed. 2019).[3]   Second, the "account" here is not held "pursuant to a trust agreement," rather the "trust agreement" is between the Trust and Mr. Jain and the Trust itself is the Bank's customer.   Old Dominion's citation to *Marcus, Santoro & Kozak, P.C. v. Hung-Lin Wu*, 274 Va. 743, 752, 652 S.E.2d 777, 782 (2007) is inapposite.   In that case, the Supreme Court of Virginia rejected plaintiff's analogy between a lawyer's trust account and an account held by a depositor at a bank; finding that a client retains an equitable or beneficial ownership interest in the funds deposited in an attorney's trust account, while a depositor in a bank retains no ownership interest in the funds deposited.   *Id*.   Here, the "trust" relationship is between Mr. Jain and the Trust itself, not between the Trust and Old Dominion.

Old Dominion attempts to rely on the Treasury Management Master Agreement (the "Master Agreement") to argue that the Trust was not used for personal, family or household

---

[3] As further illustration, 18 U.S.C.A § 20 defines "financial institution" as
(1) an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act);
(2) a credit union with accounts insured by the National Credit Union Share Insurance Fund;
(3) a Federal home loan bank or a member, as defined in section 2 of the Federal Home Loan Bank Act (12 U.S.C. 1422), of the Federal home loan bank system;
(4) a System institution of the Farm Credit System, as defined in section 5.35(3) of the Farm Credit Act of 1971;
(5) a small business investment company, as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662);
(6) a depository institution holding company (as defined in section 3(w)(1) of the Federal Deposit Insurance Act);
(7) a Federal Reserve bank or a member bank of the Federal Reserve System;
(8) an organization operating under section 25 or section 25(a) of the Federal Reserve Act;
(9) a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978); or
(10) a mortgage lending business (as defined in section 27 of this title) or any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974.

The Trust at issue here is not synonymous with any of the "institutions" listed above.

purposes, because the Master Agreement provides that the Trust would not use the bank's services for personal, family or household purposes.  Motion to Dismiss at pp. 3, 9.  Again, the Master Agreement was not attached or referred to in the Complaint, and thus should not be considered on a motion to dismiss.  *Carrington*, 760 F. Supp. 2d at 592 (E.D. Va. 2010).

Further, prior to filing the Complaint, the Trust requested from Old Dominion all documents and communications related to the Trust Account and fraudulent wires.  *See* Exhibit 1 February 6, 2020 Demand Letter from Kristin E. Draper to Edward W. Cameron, Esq. requesting, *inter alia*, "[a]ny and all terms and conditions to which you contend Mr. Jain agreed in connection with the account, specifying the precise sections that you allege Mr. Jain has breached."  Old Dominion refused to provide any documents or communications in response to the February 6, 2020 letter, and should not be permitted to conceal documents and then attempt to attach them in order to argue a motion to dismiss.[4] Moreover, as stated above, Old Dominion steered Mr. Jain toward opening this type of account, and should not be permitted to take advantage of his reliance on their recommendations in order to avoid liability under the EFTA.

Old Dominion's completely unsupported allegation that the Trust was not used for personal or household purposes is without merit.  Motion to Dismiss, at p. 10, fn. 9.  First, since the trust documents are not attached to the Complaint it would be improper for the Court to even consider them on a motion to dismiss. *Carrington*, 760 F. Supp. 2d at 592 (E.D. Va. 2010).  Second, Old Dominion's assertion that the Trust is not used for personal or household purposes is supported by zero evidence.  In fact, the Trust was formed solely to safeguard Mr. Jain's assets and the assets

---

[4] Pursuant to Rule 12(d), if matters outside the pleadings are submitted in conjunction with, or in opposition to, a 12(b)(6) motion the court must either exclude such materials from consideration or convert the motion into a motion for summary judgment. Fed.R.Civ.P. 12(d).  If the motion is converted, the Trust must be entitled to discovery.  *Id.*

held by the Trust are not used for business purposes.  Third, Mr. Jain would not have been able to

open the Trust Account with Old Dominion without providing Old Dominion with a copy of the

trust documents, so it is likely that Old Dominion knows, and knew when the account was opened,

that the Trust is in fact held solely for personal, family and household purposes.  Lastly, Old

Dominion's attempt to excuse its own breach by pointing to alleged failings by Mr. Jain to report

a "hacking" incident fall short.  *See* Motion to Dismiss, at p. 6.  Old Dominion argues that the

Master Agreement obligated Mr. Jain to "immediately notify Bank of any unauthorized access or

use of the Services or breach in its security systems," and that Mr. Jain did not provide notice to

the Bank when his email was hacked in September 2020.  *Id.*  The plain language of the provision

Old Dominion cites belies its own argument.  Mr. Jain was obligated to notify the Bank of (i) any

unauthorized access or use of the Service, which did not occur until the Bank processed the

fraudulent First Wire; or (ii) any breach in its security systems; which has never occurred, email

not being a "security system."

### iii. The EFTA Encompasses The First Wire Because Funds Were Wired Out Of An Account Used For Personal, Family And Household Purposes.

Old Dominion argues that the EFTA does not apply to the First Wire because the Act does

not protect transfers completed through "Fedwire" or other wire transfer systems that are used to

transfer funds to/from financial institutions or businesses.  Motion to Dismiss at pp. 11-12.  Again,

this argument is without merit because here, the First Wire fraudulently transferred funds out of

an account primarily used for "personal, family, [or] household ... purposes," thus bringing the

Trust Account within the ambit of the EFTA.  There are no allegations in the Complaint that that

the funds were transferred from a business account or through Fedwire.[5]  Several of the cases cited by Old Dominion support this point.  *Wright v. Citizen's Bank of E. Tennessee*, 640 F. App'x 401, 404 (6th Cir. 2016) (funds transfers at issue were made through Fedwire); *Langston & Langston, PLLC v. SunTrust Bank*, 2020 WL 4907220, at *6 (S.D. Miss. Aug. 20, 2020) (wire transfer at issue was conducted via FedLine, a system which interfaces with FedWire).  And while some courts have held that wire transfers are exempt from the EFTA, *see, e.g.*, *McClellon v. Bank of Am. N.A.*, 2018 WL 4852628, at *5 (W.D. Wash. Oct. 5, 2018), others have found that that EFTA does encompass wire transfers where they are made from accounts held primarily for personal, family or household purposes.  *See, e.g. Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 638 (S.D.N.Y. 2003) (noting that EFTA "governs wire transfers to and from bank accounts 'established primarily for personal, family, or household purposes,'" and stating that since "the purpose of the account in question was purely commercial," EFTA was inapplicable); *Golden-Koether v. JPMorgan Chase Bank, N.A.*, 2011 WL 6002979, at *2 (D.N.J. Nov. 29, 2011) ("The Court finds that the EFTA applies to Plaintiffs' claim that Chase failed to provide supporting documentation regarding what the Complaint appears to suggest may have been unauthorized wire transfers from a consumer account jointly owned by [plaintiff] and her ex-husband").

Further, while the "Fedwire transfer" exception includes, "[a]ny transfer of funds through Fedwire or through a similar wire transfer system that is used primarily for transfers between financial institutions or between businesses," 12 C.F.R. § 205.3(c)(3), the Official Staff Interpretations of Regulation E provide that "[i]f a financial institution makes a fund transfer to a consumer's account after receiving funds through Fedwire or a similar network, the transfer by

---

[5] Fedwire is a real-time gross settlement system of central bank money used by Federal Reserve Banks to transfer funds electronically between member institutions.  Fedwire Funds Services, (February 19, 2014), *available at* https://www.federalreserve.gov/paymentsystems/fedfunds_about.htm.

ACH is covered by the regulation even though the Fedwire or network transfer is exempt." Supplement I to Part 205--Official Staff Interpretations, 205.3(c)(3), First Comment. Here, the Trust has not pled that Fedwire or a similar wire transfer system was used to complete the transfer, and the Trust certainly has not pled that Fedwire or a similar wire transfer system was employed for the entirety of the subject transaction. As such, Old Dominion cannot avail itself of the "Fedwire" exception, and at a minimum, the Trust should be entitled to discovery regarding how the fraudulent First Wire was processed.

Electronic fund transfers covered by the Act have three components: 1) a transfer of funds; 2) that is initiated by electronic means, and 3) debits or credits a consumer account. *Voeks v. Pilot Travel Centers*, 560 F. Supp. 2d 718, 720 (E.D. Wis. 2008). The Trust has alleged all three components here: (i) there was a transfer of funds; (ii) initiated by electronic means, *i.e.* completed via wire transfer; that (iii) debited a consumer account (the Trust Account, which despite being named a "Business MMA" account, is used for personal, family and household purposes). *Cf.*, *Regatos*, 257 F.Supp.2d at 638, n. 10 (S.D.N.Y.2003) (finding that "[t]he EFTA governs wire transfers to and from bank accounts 'established primarily for personal, family, or household purposes,'" and since the customer admitted that "the purpose of the account in question was purely commercial," "the EFTA [was] inapplicable"). In contrast, to the case law cited by Old Dominion involving business or commercial accounts, here the Trust was formed to safeguard Mr. Jain's assets and solely for personal and household purposes. Compl. ¶¶ 12, 32.

### iv.    This Court Should Exercise Supplemental Jurisdiction Over The State law Claims.

Old Dominion lastly argues that this Court should decline to exercise supplemental jurisdiction over the state law claims asserted in the Complaint. The Trust has alleged a plausible claim for violation of the EFTA and Regulation E based on Old Dominion's failure to limit the

Trust's liability for the fraudulent transfer of funds through the First Wire and failure to conduct a good faith investigation and provide the Trust with the results of such investigation in accordance with the requirements of the Act.  The Motion to Dismiss as to Count I, and argument that the Court should decline to exercise supplemental jurisdiction over the state law claims, thus fails. Further, Old Dominion's argument that Count I (EFTA) was brought as a means to claim treble damages and attorney's fees despite the damages limitation is in the Master Agreement is wholly without merit.  Again, the Master Agreement was not attached to the Complaint (and was not provided to the Trust prior to filing the Complaint), and thus should not be considered on this motion to dismiss.  *Carrington*, 760 F. Supp. 2d at 592 (E.D. Va. 2010).  Moreover, Old Dominion should not be able to skirt the consumer protections provided by Congress through the EFTA (including treble damages) by relying on a contractual provision that the bank itself drafted, and then steered their customer (the Trust) toward agreeing to by recommending what type of account to open.

> **B.    Old Dominion Breached The Wire Transfer Agreement And Account Terms And Conditions By Failing To Verify The First Wire And Transferring Funds Without Authorization**

The Trust alleges that Old Dominion breached the Wire Transfer Agreement (Compl. Exhibit 1), by failing to follow agreed-upon verification procedures and permitting a transfer that was well above the authorized contractual limit.  The Trust further alleges that Old Dominion breached the Account Terms and Conditions (Compl. Exhibit 7) by failing to verify the authenticity of the First Wire, transferring $638,201.00 of the Trust's property without authorization, and failing to follow commercially reasonable practices within the banking industry to protect the Trust's assets.  Compl. ¶ ¶ 51, 54.

### i.   The Complaint Alleges Specific Breaches of The Wire Transfer Agreement.

The Wire Transfer Agreement provides that Old Dominion is authorized to complete a wire transfer request if such request is "duly verified pursuant to the agreed upon security procedures." Compl. Exhibit 1 at page 3.  Old Dominion's argument that the Complaint fails to state what verification procedures the Bank failed to follow is wholly without merit.  *See* Motion to Dismiss, at p. 15.  As stated in the Complaint, Old Dominion's transfer of $638,201.00, was a material breach of the Wire Transfer Agreement (i) because Old Dominion failed to follow the agreed-upon verification procedures, and (ii) because Old Dominion permitted a transfer well above the $500,000 contractual limit.  Complaint ¶ 50.  The agreed-upon verification procedures are set forth in the Wire Transfer Agreement itself, attached as Exhibit 1 to the Complaint.  See Exhibit 1 at page 5, "Security Procedures for Domestic Requests and Foreign Requests," (the "*Security Procedures*").  Old Dominion breached the agreed-upon Security Procedures in no less than three ways.

First, Old Dominion completed a request for wire transfer that was initiated via a fraudulent email.  Security Procedure (a) requires that "Requests shall be made utilizing the Wire Transfer Service component of the Business eBanking Service platform."  Compl. Exhibit 1 at page 5/5.  Accepting a request for wire transfer via email (whether believed to be a "secured email" or not, as alleged in the Motion to Dismiss), was a breach of this required Security Procedure and the Wire Transfer Agreement.

Second, Security Procedure (c) requires that "each such Authorized User shall have a unique Wire Transfer password assigned . . . which he or she must utilize at the time of submitting each Request."  Compl. Exhibit 1 at page 5/5.  Old Dominion breached this provision of the Wire

Transfer Agreement by initiating and completing the First Transfer without requiring the referenced Wire Transfer Password.

Third, Security Procedure (d) requires that "[p]rior to submitting a Request through the Business eBanking Service, the Authorized User must request and receive a one-time authentication code via text message to an authorized mobile device number." Compl. Exhibit 1 at page 5/5. Old Dominion failed to comply with this Security Procedure by failing to require an authentication code prior to completing the First Transfer. Had Old Dominion complied with this Procedure, Mr. Jain would have been alerted to the fact that a fraudulent transfer was requested, and would not have had to wait for a second fraudulent request before discovering the fraud upon the Trust Account.

Old Dominion's claim that it complied with the Security Procedures because it verified Mr. Jain's date of birth and social security number is also without merit. Motion to Dismiss at p. 15. Verification of date of birth and social security number is not among the Security Procedures listed in the Wire Transfer Agreement. *See* Compl. Exhibit 1 at page 5/5. Whether Old Dominion thought verifying this information made the transaction more secure is immaterial; Old Dominion failed to follow the agreed-upon Security Procedures, which amounts to a material breach of the Wire Transfer Agreement.

Further, it is unclear that Old Dominion did in fact verify the First Wire by confirming Mr. Jain's date of birth and social security number (which would have been a breach of contract, regardless). The Motion to Dismiss attaches the International Wire Transfer Authorization Form that was allegedly sent to Mr. Jain via "secure email," (Motion to Dismiss, Exhibit B at page 6/10), and also attaches the version of the International Wire Transfer Authorization Form that was completed by Old Dominion (Motion to Dismiss, Exhibit B at page 9/10). This completed version

of the form is at odds with what Old Dominion is arguing: the section titled "verification information" states "callback: yes/no (circle one)," with neither circled. *See id*. It is therefore unclear whether Old Dominion did in fact attempt to verify the First Wire by calling the phone number included in the email chain (which did not match the phone number provided on the Wire Transfer Implementation Form but which Old Dominion nonetheless argues was commercially reasonable). At a minimum, these factual discrepancies need to be resolved and the Trust should be entitled to discovery regarding same, making the Motion to Dismiss inappropriate at this juncture.

### ii.     The Wire Transfer Agreement Unequivocally States The Authorized Wire Transfer Amount.

Old Dominion's argument that there is "no legally enforceable transfer limit" is also without merit. The Wire Transfer Agreement contains a cover page entitled "Wire Transfer Implementation," and which sets the "approved company limit" for wire transfers at $500,000. Compl. Exhibit 1. The Wire Transfer Implementation also lists four different accounts as "authorized wire transfer accounts," each with a $500,000 limit. *Id.*

The Wire Transfer Implementation clearly limits authorized wire transfers to $500,000; a provision that Old Dominion breached when it transferred $638,201.00 from the Trust Account. Whether this was a limit placed on the Trust by the bank (as Old Dominion argues) is immaterial: it was a contractual limitation that the Trust was entitled to rely upon and which Old Dominion breached. The $500,000 limit was placed on the account to safeguard against a potential large scale loss, which is precisely what occurred when Old Dominion breached this contractual provision.

Lastly, Old Dominion's claim that the Trust waived this $500,000 limit in June 2019 is without merit. Old Dominion claims that on June 19, 2019 the Trust initiated or allowed a wire

transfer payment of $2,468,299.00, and that this payment allegedly shows the limit on the Trust Account was increased or waived by the Trust. Motion to Dismiss at p. 5, fn. 6; p. 17, fn. 13 and Exhibit C.   The wire transfer exhibited in Exhibit C to the Motion to Dismiss relates to an entirely different account, one held in the name of "Project Apollo Seller Rep LLC" with an entirely different account number.   Not only are this exhibit and the arguments related thereto completely irrelevant, the Trust could not have "waived" the approved wire transfer limit on the Trust Account through a wire from a completely unrelated account.   Third, it bears mentioning again that Exhibit C to the Motion to Dismiss was not attached to the Complaint and thus is not properly before the Court on a motion to dismiss.   *Carrington*, 760 F. Supp. 2d at 592 (E.D. Va. 2010).

### iii.   Old Dominion Failed To Follow Commercially Reasonable Practices When It Failed To Verify The Authenticity Of The First Wire Prior To Transferring $638,201.00 Of The Trust's Assets.

Old Dominion's argument that its actions in transferring $638,201.00 in violation of the specific requirements of the Wire Transfer Agreement were nonetheless commercially reasonable is illogical.   First, Old Dominion attempts to argue that its actions were "commercially reasonable as a matter of law," by relying on VA. Code § 8.4A-202(b), which provides:

> [i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender *will be verified pursuant to a security procedure*, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) *the bank proves that it accepted the payment order in good faith and in compliance with the security procedure* and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

VA. Code § 8.4A-202(b) (emphasis added).

Here, a key distinction is that Old Dominion did <u>not</u> accept the order to complete the First Wire in compliance with applicable security procedures set forth in the Wire Transfer Agreement. Old Dominion did not (i) require that the First Wire request be made using the Wire Transfers Service component of the Business eBanking Service platform (Security Procedure (a)); (ii) did not require the unique Wire Transfer password that had been assigned to Mr. Jain (Security Procedure (c)); and (iii) did not require the individual requesting the fraudulent First Wire first request and receive a one-time authentication code via text message to an authorized mobile device number (Security Procedure (d)). Instead, Old Dominion "verified" the request for the First Wire by sending a payment order in response to an email received (not one of the Security Procedures set out in the Wire Transfer Agreement) and then called a cell phone number that did not match the one provided by Mr. Jain on the Wire Transfer Agreement (also not one of the Security Procedures set out in the Wire Transfer Agreement).

Old Dominion's citation to the Wire Transfer Agreement undercuts its own argument. Motion to Dismiss at p. 19; "Compl., Exhibit 1 at § 3 ("Customer hereby authorizes and direct Bank, whenever Bank receives from Customer a Request *which, on its face, complies with the security procedure* agreed upon between Customer and Bank, to initiate a Wire Transfer") (emphasis added). Here, the request for the First Wire did not on its face comply with the Security Procedures agreed upon by the Trust and Old Dominion and set forth in the Wire Transfer Agreement. Further, a request to transfer over $500,000 from the Trust to an unknown Chinese company should have triggered additional security measures by Old Dominion, or at least alerted Old Dominion to the fact that it should be following *all* agreed-upon security procedures before completing the First Wire. Old Dominion's failure to follow the clear and explicit security procedures in the Wire Transfer Agreement was commercially unreasonable.

Old Dominion also relies on the Wire Transfer Agreement to argue that it did not act in bad faith in issuing the First Wire.  The Wire Transfer Agreement provides that the "Bank shall be conclusively deemed to have discharged its duties to act in good faith and exercise ordinary care *if it has followed the agreed upon security procedures*."  Compl. Exhibit 1 at § 3 (emphasis added).  Old Dominion did not follow the security procedures agreed upon by the parties and embodied in the Wire Transfer Agreement.  Old Dominion's attempt to excuse its lack of ordinary care by pointing to its efforts to verify Mr. Jain's social security number and date of birth (the verification of which is not an applicable security procedure) is wholly without merit and contradicts the requirements of the Wire Transfer Agreement, which expressly states the security procedures Old Dominion was required to follow before completing a domestic or foreign wire transfer.

Old Dominion's attempt to excuse its own breach by pointing to alleged failings by Mr. Jain to report a "hacking" incident fall short.  *See* Motion to Dismiss, at pp. 6, 20.  Old Dominion argues that the Master Agreement obligated Mr. Jain to "immediately notify Bank of any unauthorized access or use of the Services or breach in its security systems," and that Mr. Jain did not provide notice to the Bank when his email was hacked in September 2020.  Motion to Dismiss at p. 6.  The plain language of the provision Old Dominion cites belies its own argument.  Mr. Jain was obligated to notify the Bank of (i) any unauthorized access or use of the Service, which did not occur until the Bank processed the fraudulent First Wire; or (ii) any breach in its security systems; which has never occurred, email not being a "security system."  Old Dominion argues that "[t]he problem with the October 9, 2019 transfer was not any conduct on the part of the Bank but was the fact that Jain's email and personal information had been compromised."  Motion to Dismiss, at p. 20.  But this is *precisely* why the Bank was obligated to follow the agreed-upon Security Procedures and not process a request made via email for the transfer of over $500,000 to

an unknown Chinese company, particularly since China is a known wire fraud destination within the banking industry.  The Security Procedures embodied in the Wire Transfer Agreement are meant to safeguard against the precise type of fraud that occurred here.  By failing to abide by these agreed-upon procedures Old Dominion breached the Wire Transfer Agreement and opened the Trust Account to the exact type of fraud the Procedures were meant to prevent.

### C.   The Complaint States A Plausible Claim For Negligence

In its Complaint, the Trust argues that Old Dominion breached its fiduciary duties and failed to follow generally accepted best practices in the banking industry when it authorized the transfer of funds through the First Wire without adequately verifying the source of the request, and that this negligence on the part of Old Dominion proximately caused the Trust's loss of $638,201.00, plus the interest that would have accrued on that amount since the date of the First Wire.  Complaint at ¶¶ 57-64.  In its Motion to Dismiss, Old Dominion argues that the Trust's negligence claim is barred by the source of duty rule under Virginia law.  Motion to Dismiss at pp. 22-23.

Old Dominion's argument that it does not owe Mr. Jain or the Trust fiduciary duties simply because their relationship is "contractual in nature" is too simplistic.  What Virginia law prohibits is a tort claim challenging the breach of a duty arising "solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998).  Here, the Trust's negligence claim arises not solely by virtue of the contract(s) between the parties, but also based on Old Dominion's position as a fiduciary.  The case law cited by Old Dominion is

23

distinguishable[6] because here, the relationship between Mr. Jain and Old Dominion went beyond the typical "debtor/creditor" relationship between a bank and a depositor.

Under Virginia law, a fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *H–B Partnership v. Wimmer*, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979).   Courts have found that "a fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied." *Jones v. Commerce Bancorp, Inc.*, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006). Here, Mr. Jain placed special confidence in Old Dominion to not only safeguard his assets held in the Trust Account, but also to provide banking services and advice, which Old Dominion did with respect to the many accounts and many millions of dollars Mr. Jain had on deposit with the bank. Mr. Jain's close relationship with Old Dominion is evidenced by Exhibit B to the Motion to Dismiss, where an employee of Old Dominion states that "Kevin and I look forward to seeing you tomorrow at 12 at Capital Grill in Tyson's."  Motion to Dismiss, Exhibit B at p. 2.   In fact, it was at this lunch meeting that representatives of Old Dominion asked Mr. Jain to become an investor in the bank.   Mr. Jain and Old Dominion did not have a standard creditor/debtor relationship as Old Dominion argues, but rather had a relationship of trust and confidence that created independent fiduciary duties outside of the parties' contractual relationship.   The Trust should be entitled to

---

[6] *Matthews v. Bank of Am., N.A.*, 2006 WL 1720688, at *4 (E.D. Va. June 20, 2006) (plaintiff failed to explain how opening a bank account created rights of a "fiduciary character"); *Hughes v. Bank of Am.*, 2008 WL 857059, at *2 (W.D. Va. Mar. 31, 2008) ("plaintiff's allegations, at most, suggest that a contractual debtor-creditor relationship exists"); *Wynn v. Wachovia Bank, N.A.*, 2009 WL 1255464, at *4 (E.D. Va. May 6, 2009) (no fiduciary duty is created based on the banking relationship).

learn through discovery the nature of this relationship, particularly since Old Dominion itself has introduced evidence demonstrating it went beyond the standard bank/depositor relationship.

Old Dominion's negligence in its failure to adequately verify the source of the request of the First Wire before transferring $638,201.00 to a never-before-heard-of account in China is further solidified by the steps Old Dominion took in response to the <u>second</u> request to transfer funds on October 15, 2019 (the "Second Wire").  Unlike with the First Wire, upon receipt of the request for the Second Wire Old Dominion contacted Mr. Jain on his authorized contact number (the one supplied on the Wire Transfer Agreement) to verify the transfer.  It was only upon receipt of this phone call that Mr. Jain learned the First Wire had already been completed.  The Trust is entitled to discovery regarding why Old Dominion chose to call Mr. Jain (on the correct phone number) in response to the request for the Second Wire, but not the First Wire.  It is also entitled to discovery regarding the relationship between Mr. Jain/the Trust and the Bank, making the Motion to Dismiss inappropriate.

Old Dominion's failure to not only abide by its contractual obligations but also to abide by the generally accepted standards of care applicable to all financial institutions was negligence and proximately caused the loss of $638,201.00 by the Trust.  It is because Old Dominion occupied a position of "trust and confidence," with respect to the Trust and Mr. Jain, and was not merely the opposing party to a contract, that the Trust's negligence claim is not barred by the source of duty rule.  *See, e.g. Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887, 893, 782 N.Y.S.2d 530, 535 (Sup. Ct. 2004) (holding that Met Life had a duty to protect the confidential personal information provided by the plaintiffs.  The court noted that plaintiff's claim for failure to safeguard identifying information was "similar to ... [a] cause[ ] of action for breach of [the] fiduciary duty of confidentiality" that often arises in the context of physician-patient relationships); *Commerce*

*Bancorp, Inc.*, 2006 WL 1409492, at *3 (failure to safeguard a client's personal identifying information may give rise to a claim for breach of fiduciary duty).

### D.      The Complaint States A Plausible Claim For Conversion

The Trust's Complaint asserts a claim for conversion (Count IV) based on Old Dominion's wrongful exercise of authority and control over the Trust's assets when it transferred the $638,201.00 based on the fraudulent wire. Compl. at ¶ 68. In order to assert a claim for conversion under Virginia law, the plaintiff must demonstrate "(1) ownership or right to possession of property at the time of the conversion, and (2) the defendant's wrongful exercise of dominion or control over the plaintiff's property, depriving the plaintiff of possession." *Pro-Concepts, LLC v. Resh*, No. 2:12CV573, 2014 WL 549294, at *16 (E.D. Va. Feb. 11, 2014) (*citing Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 457 (E.D. Va. 2009)). Old Dominion argues that Count IV is barred by the source of duty rule.

For the same reasons set forth above with respect to the Trust's negligence claim, the Trust's conversion claim is not barred by the source of duty rule. As alleged by the Trust, Old Dominion owed the Trust independent fiduciary duties apart from the Master Agreement, Wire Transfer Agreement and Terms and Conditions. Old Dominion occupied a fiduciary relationship with respect to the Trust based on the special confidence Mr. Jain placed in it to safeguard his assets and provide banking services and advice with respect to the many accounts and many millions of dollars he had on deposit with the bank. Compl. ¶ 66. The parties did not occupy a standard creditor/debtor relationship, as argued by Old Dominion, but rather an unusually close relationship that eventually led Old Dominion to request Mr. Jain become an investor in the bank. At a minimum, the Trust should be permitted discovery into the nature of this relationship, making Old Dominion's motion to dismiss as to Count IV inappropriate.

## <u>CONCLUSION</u>

For the reasons set forth above, Sanjiv Jain Living Trust's Complaint asserts facts sufficient to support the relief sought in Counts 1 through 4.  Accordingly, Plaintiff Sanjiv Jain Living Trust respectfully requests this Court deny Old Dominion National Bank's Motion to Dismiss in its entirety.  Dismissal at this stage of the litigation is inappropriate given the fact-intensive nature of these claims, and where the Complaint alleges sufficient facts to support its claims for violation of the EFTA, breach of contract, negligence and conversion based on Old Dominion's actions transferring $500,000 of Trust assets to an unknown foreign entity in disregard of the contractually-agreed upon security procedures and in violation of generally accepted best practices in the banking industry.

Respectfully submitted,

**SANJIV JAIN LIVING TRUST**
By Counsel

 /s/ William B. Schroeder
William B. Schroeder (VSB No. 43179)
Kristin E. Draper (admitted *pro hac vice*)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland  20854-6803
TEL:   (301) 230-5200
FAX:   (301) 230-2891
Email:  WSchroeder@shulmanrogers.com
          KDraper@shulmanrogers.com
*Counsel for Plaintiff*


Dated:  November 10, 2020

<u>**CERTIFICATE OF SERVICE**</u>

      The following parties received electronic notice of this filing – **Memorandum in Support of Plaintiff's Opposition to Motion to Dismiss and proposed Order** – this 10th day of November, 2020, to:

          Edward W. Cameron
          Matthew H. Sorensen
          *Counsel for Defendant Old Dominion National Bank*

                            /s/ William B. Schroeder
                            William B. Schroeder